**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **BREEZE CHAHTA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20-cv-1158-DWD** |
| | ) | |
| **BUREAU OF INDIAN AFFAIRS, and** | ) | |
| **CHOCTAW NATION OF** | ) | |
| **OKLAHOMA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

On November 2, 2020, Plaintiff Breeze Chahta, filed a *pro se* civil rights Complaint (Doc. 1) against the named Defendants.  Plaintiff also seeks leave to proceed *in forma pauperis* ("IFP") without prepayment of the filing fee in this action (Doc. 3).  Plaintiff is not a prisoner within the meaning of 28 U.S.C. § 1915(h), nonetheless, a federal court may allow a civil case to proceed without prepayment of fees, if an IFP applicant demonstrates that he is indigent under 28 U.S.C. § 1915(a)(1).  *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) (District courts "have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless fee status.  The district court may screen the complaint prior to service on the defendants and must dismiss the complaint if it fails to state a claim.").

Two issues must be resolved before *in forma pauperis* status can be granted.  First, the plaintiff must show that he is indigent by submitting an affidavit that "includes a

statement of all assets [he] possess [showing] that [he] is unable to pay such fees or give security therefor"; and second, plaintiff's complaint must not be clearly frivolous or malicious, must state a claim on which relief may be granted, and may not seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

Upon review of Plaintiff's financial affidavit, the Court is satisfied that Plaintiff is indigent.  However, the second prong, requires additional analysis.  To proceed *in forma pauperis*, Plaintiff's complaint must state a claim on which relief may be granted.  An action states a claim upon which relief can be granted if it does not plead "sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   When considering the claims in a *pro se* complaint, the factual allegations must be liberally construed in favor of the plaintiff.  *Rodriguez v. Plymouth Amb. Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

<u>Discussion</u>

Plaintiff's alleges the following facts in his Complaint (Doc. 1) and Motion to Proceed (Doc. 7), which the Court considered for the purposes of evaluating the merits of Plaintiff's Complaint:  Plaintiff is the Chief of the Nu'Yudah Tribe (Choctaw Band) of Southern Illinois, and he, and the 66 members of the Nu'Yudah Tribe are direct descendants from an individual named Ada Thomas.  Sometime around the 1910 United States Census, Ada Thomas was considered a member of the Choctaw Nation of

Oklahoma (the "Choctaw Nation").  However, due to various historical inaccuracies, whether intentional, fraudulent, or otherwise, caused by some combination of actors from the Choctaw Nation, the United States Census, or the predecessor agencies to the United States Bureau of Indian Affairs,  Ada Thomas, and her descendants were reclassified as "African Americans" and not included as members of the Choctaw Nation (Doc. 7, at pg. 18).

Plaintiff argues that this reclassification was fraudulent, and done for the purposes of obtaining Ada Thomas' land, expelling the future members of the Nu'Yudah Tribe from the Choctaw Nation because of their skin color, or some other purpose, which has now resulted in the current 66 members of the Nu'Yudah tribe being denied membership rights by the Choctaw Nation.  Plaintiff seeks the following relief: (1) that the Nu'Yudah Tribe and its members be recognized as rightful members of the Choctaw Nation of Oklahoma, and (2) for the Nu'Yudah Tribe, and specifically the descendants of Ada Thomas, to be paid reparations in the amount of one hundred million dollars for the alleged deprivation of their civil rights (Doc. 7, at pp. 18-19).

Prior to bringing this Complaint, Plaintiff alludes to proceedings brought before the Bureau of Indian Affairs and the Choctaw Nation, allegedly resulting in denials and various appeals.  However, the pleadings do not include documents or any factual determinations for the Court to determine the scope and extent of these proceedings. Further, even construing the factual allegations in Plaintiff's Complaint broadly, the Court cannot readily identify a claim with federal jurisdiction so to satisfy the pleading

3

requirements of Federal Rule of Civil Procedure 8.  The Complaint further raises sovereign immunity issues.

Indian tribes are "distinct, independent political communities," with "unique and limited" sovereignty centered on the land held by the tribe and on tribal members within the reservation.  *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014); *Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 327-28 (2008).  Tribes are "subject to plenary control by Congress. And yet they remain 'separate sovereigns pre-existing the Constitution.' Thus, unless and 'until Congress acts, the tribes retain' their historic sovereign authority." *Bay Mills Indian Community*, 572 U.S. at 788 (internal citations omitted).  Further, "tribes retain power to legislate and to tax activities on the reservation, including certain activities by nonmembers, to determine tribal membership, and to regulate domestic relations among members.  They may also exclude outsiders from entering tribal land."  *Plains Commerce Bank*, 544 U.S. at 328-39 (internal citations omitted); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) (Indian tribes have the power to make their own substantive law in internal matters, including regulating memberships and inheritance rights).

As "domestic dependent nations", Indian tribes exercise inherent sovereign authority over their members and territories."  *Oklahoma Tax Comm'n v. Citizen Bank Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991).  An aspect of this sovereign immunity bars suits against tribes "absent a clear waiver by the tribe or congressional abrogation."  *Id.* at 509; see *also Santa Clara Pueblo*, 436 U.S. at 58-59; *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 826 (7th Cir. 2016) (Indian tribes can claim immunity

from suit "unless Congress has told us in no uncertain terms that" it meant to abrogate their sovereign immunity). The abrogation of tribal sovereign immunity may not be implied, and any ambiguity must be resolved in favor of immunity. *Id.* at 827 (relying on *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) and *Santa Clara Pueblo*, 436 U.S. at 48).

Federal courts have "leeway to choose among threshold grounds for denying audience to a case on the merits." *Meyers*, 836 F.3d at 821-22. Such threshold grounds include whether Plaintiff is properly before this Court for purposes of subject matter jurisdiction, or whether Plaintiff can obtain relief from the Defendants through this suit. *Id.* at 822. Plaintiff seeks, in part, a declaration that he and the members of the Nu'Yudah tribe be recognized as members of the Choctaw Nation of Oklahoma. However, Plaintiff has not identified any waiver or Congressional grant of authority that might support Plaintiff's private right of action to maintain this action, or to further seek monetary relief from the named defendants. As these threshold issues are far from clear, the Court declines to permit this matter to continue without further assurances of its jurisdiction or Plaintiff's ability to obtain relief from the defendants named in this suit. *See Santa Clara Pueblo*, 436 U.S. at 60 ("Although Congress clearly has the power to authorize civil actions against tribal officers, and has done so with respect to habeas corpus relief in [28 U.S.C.] § 1303, a proper respect both for tribal sovereignty itself and for the plenary authority of Congress in this area cautions that we tread lightly in the absence of clear indications of legislative intent.").

Because the Complaint fails to state a claim for relief, Plaintiff's IFP Motion must be denied, and the Complaint dismissed. However, the Court will permit Plaintiff an

opportunity to amend his complaint to state a readily identifiable claim with federal jurisdiction.

**<u>Disposition</u>**

For the above stated reasons, Plaintiff's Motion to proceed *in forma pauperis* (Doc. 3) is **DENIED**.  Plaintiff's Motion to Proceed (Doc. 7) is **DENIED**.  Plaintiff's Complaint (Doc. 1) is **DISMISSED, without prejudice**.  Plaintiff is granted leave to file an amended complaint.  Plaintiff has until **July 1, 2021**, to submit an Amended Complaint.  Failure to file an Amended Complaint will result in dismissal of this cause for failure to state a claim.

**SO ORDERED.**

Dated: June 4, 2021

_____
DAVID W. DUGAN
United States District Judge