IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BREEZE CHAHTA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-1158-DWD |
| | ) |
| BUREAU OF INDIAN AFFAIRS, and | ) |
| CHOCTAW NATION OF | ) |
| OKLAHOMA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

On November 2, 2020, Plaintiff Breeze Chahta, filed a *pro se* civil rights complaint against Defendants, the Bureau of Indian Affairs and Choctaw Nation of Oklahoma (Doc. 1), and a motion to proceed *in forma pauperis* ("IFP") without prepayment of the filing fee in this action (Doc. 3). Following a threshold review of the complaint, the Court dismissed the complaint without prejudice for a failure to state a claim, and likewise denied Plaintiff's IFP motion (Doc. 8). The Court granted Plaintiff leave to file an amended complaint, and later directed Plaintiff to pay the filing fee or file a new IFP motion (Doc. 8; Doc. 10). Plaintiff filed his Amended Complaint (Doc. 9) and a new Motion for Leave to Proceed IFP (Doc. 11). Now before the Court is Plaintiff's renewed IFP motion (Doc. 11).

Plaintiff is not a prisoner within the meaning of 28 U.S.C. § 1915(h), nonetheless, a federal court may allow a civil case to proceed without prepayment of fees, if an IFP

applicant demonstrates that he is indigent under 28 U.S.C. § 1915(a)(1).  *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) (District courts "have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status.  The district court may screen the complaint prior to service on the defendants and must dismiss the complaint if it fails to state a claim.").

Two issues must be resolved before *in forma pauperis* status can be granted.  First, the plaintiff must show that he is indigent by submitting an affidavit that "includes a statement of all assets [he] possess [showing] that [he] is unable to pay such fees or give security therefor"; and second, plaintiff's complaint must not be clearly frivolous or malicious, must state a claim on which relief may be granted, and may not seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

Upon review of Plaintiff's financial affidavit, the Court is satisfied that Plaintiff is indigent.  However, the second prong requires additional review.  To proceed *in forma pauperis*, Plaintiff's complaint must state a claim on which relief may be granted.  An action states a claim upon which relief can be granted if it does not plead "sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  When considering the claims in a *pro se* complaint, the factual allegations must be liberally construed in favor of the plaintiff.  *Rodriguez v. Plymouth Amb. Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Amended Complaint

As alleged in his amended complaint (Doc. 9), Plaintiff is the Chief of the Nu'Yudah Tribe (Choctaw Bank) of Southern Illinois. Plaintiff, and the 66 members of the Nu'Yudah Tribe are direct descendants from a deceased individual named Ada Thomas. Plaintiff alleges that Ada Thomas was a member of the Choctaw Nation. However, because of fraud or other actions, the Dawes Commission[1] either (1) failed to properly enroll Ada Thomas onto the Dawes Rolls or (2) Ada Thomas' identity, and subsequent land allocation, were unlawfully assumed after she was fraudulently enrolled onto the Dawes Rolls. Now, Plaintiff, on behalf of the Nu'Yudah Tribe, and the alleged descendants of Ada Thomas, seek formal recognition as members of the Choctaw Tribe. Plaintiff also seeks reparations in the amount of one-hundred million dollars.

With the amended complaint, Plaintiff attached a partial letter from the United States Department of the Interior Bureau of Indian Affairs, dated May 16, 2019 (Doc. 9, pp. 40-41). This letter purports to deny Plaintiff's application for a Certificate of Degree of Indian Blood with the Choctaw Nation (*Id.*). Plaintiff also provided historical documents related to Ada Thomas, including: (1) an April 11, 1903 Decision from the Department of Interior Commission to the Five Civilized Tribes, identifying Ada Thomas

---

[1] The "Dawes Commission" refers to the 1897 Commission of the Five Civilized Tribes, which was created by the Act of March 3, 1892, 27 Stat. 612, 645. *See Choctaw Nation of Indians v. United States*, 318 U.S. 423, 433 n. 5 (1943). The Dawes Commission was charged with negotiating the extinguishment of tribal land and allotting lands of the Cherokee Nation, the Choctaw Nation, the Chickasaw Nation, the Muskogee (or Creek Nation), and the Seminole Nation ("The Five Civilized Tribes") to tribal members. *See Kimberlin v. Comm'n to Five Civilized Tribes*, 104 F. 653, 658 (8th Cir. 1900); *in accord Choctaw Nation of Indians*, 318 U.S. at 433 n. 5. Relevant to this matter, the Dawes Commission "was authorized to hear and determine applications for citizenship in any of the Five Civilized Tribes" and to make rolls of citizenship of those tribes ("the Dawes Rolls"). *United States v. Wildcat*, 244 U.S. 111, 116-118 (1917).

as Mississippi Choctaw (Doc. 9, pp. 31-32); (2) guardianship documents for Ada Thomas; and (3) an application for an allotment of lands made on Ada Thomas' behalf, dated February 7, 1906 (Doc. 9, pp. 38-39).

In his Amended Complaint, Plaintiff appears to raise two distinct claims. First, he challenges the accuracy of the Dawes Rolls and the Dawes Commission's enrollment, or erroneous enrollment, of his ancestor, Ada Thomas in the early 1900s. Separately, he, and the other members of the Nu'Yudah, seek to compel formal recognition as members of the Choctaw Tribe.

## Discussion

The Court will not delve into a lengthy overview of the legislative history and various statues comprising the creation and duties of the Dawes Commission.[2] However, of relevance here, Congress created the Dawes Commission to make rolls of the citizens or members of the Cherokee Chickasaw, Choctaw, Creek, and Seminole Tribes. The final rolls of the Choctaw Tribe were approved by the Secretary of the Interior in March 1907. *See Kirby v. Parker*, 58 F.Supp. 309 (E.D. Okla. 1944) (citing 27 Stat. 645, 30 Stat. 495, 503; 31 Stat. 250, 31 Stat. 861, 867; 32 Stat. 500, 501). As a "quasi-judicial tribunal", the Dawes Commission's decisions concerning tribal enrollment and membership, and allotments of land are "conclusive and impervious to collateral attack." *Malone v. Alderdice*, 212 F. 668, 670 (8th Cir. 1914); *see United States v. Wildcat*, 244 U.S. 111, 120 (1917) (Once the

---

[2] For a more detailed historical overview of the Dawes Commission, see *Coleman v. United States Bureau of Indian Affairs*, 715 F.2d 1156 (7th Cir. 1983) (citing *Harjo v. Kleppe*, 420 F.Supp. 1110 (D.C.C. 1976)).

4

findings and decisions of the Dawes Commission were approved by the Secretary of the Interior they were "conclusive of the question of membership in the tribe.").

The United States Supreme Court has reasoned that the Dawes Commission was created by Congress to "forever settle" the enrollment of members of Indian tribes, subject only to impeachment under the Federal Rules of Civil Procedure for challenging final judgments.  *See United States v. Atkins*, 260 U.S. 220, 225-26 (1922); *Wildcat*, 244 U.S. at 119 (The tribal membership decisions of the Commission are "forever settled, subject to such attacks as could successfully be made upon judgments of this character for fraud and mistakes."); *see also Miller v. Allen*, 104 Okla. 39, 229 P. 152, 154 (Ok. 1924) ("The Commission . . . was a quasi judicial tribunal empowered to determine who should be enrolled and what lands should be allotted and in what way it should be allotted to every citizen and freedman, and its adjudication of these questions and of every issue of law and fact that it was necessary for it to determine in order to decide these questions is conclusive and impervious to collateral attack.").

Considering the conclusiveness of the Dawes Commission, the Court can discern no jurisdiction for it to review decisions made by the Commission nearly a century later. *See, e.g.*, *Cully v. Mitchell*, 37 F.2d 493, 499 (10th Cir. 1930), *cert denied*, 281 U.S. 740 (1930) (Raising "grave doubts" on whether the Court has any power to alter or reform the Dawes Rolls created by Act of Congress and approved by the Secretary of the Interior). The Supreme Court clearly determined that Congress' intention with the Dawes Commission was to conclusively determine the rights of memberships of the Five Tribes, including the Choctaw Tribe, "forever."  At best, two avenues may exist to challenge the

5

decisions of the Dawes Commission: (1) if the challenge fits within the narrow bounds for challenging final judgments under the Federal Rules of Civil Procedure, *see Wildcat*, 244 U.S. at 119 (The tribal membership decisions of the Commission are "forever settled, subject to such attacks as could successfully be made upon judgments of this character for fraud and mistakes."); or (2) if the matters involved were not material to the issues decided by the Commission, *see Malone v. Alderdice*, 212 F. 668, 670 (8th Cir. 1914) (holding that the birthdate and age listed for an individual on the Commission's enrollment records were not material to the Commission's determination of her enrollment as a Creek citizen, and therefore the records were not given conclusive effect as to the question of plaintiff's true age).

To the extent Plaintiff seeks to review the Dawes Commission's actions related to the membership enrollment of Ada Thomas on the Dawes Rolls, those actions are not reviewable. Membership decisions made by the Dawes Commission are given conclusive effect. *Atkins*, 260 U.S. at 225-26; *Wildcat*, 244 U.S. at 119. Plaintiff cannot reasonably argue that the issues in his complaint are immaterial to Commission's enrollment decisions concerning Ada Thomas. Further, the time for challenging her enrollment decision under the Federal Rules of Civil Procedure has long passed. *See* Fed. R. Civ. P. 60(c)(1) (motions for relief from a judgment "must be made within a reasonable time—and for [allegations of mistake, newly discovered evidence, and fraud] no more than a year after the entry of the judgment"). Even assuming Plaintiff would have standing to directly challenge the specific findings made as to Ada Thomas, Ada Thomas was allegedly enrolled as a member of the Mississippi Choctaw on April 11, 1903 (Doc. 9, pp.

6

31-32), and she died in 1977 (Doc. 12).  "Reasonable time" to challenge her enrollment under the Federal Rules of Civil Procedure has expired.

As for Plaintiff's arguments that he and the other members of the Nu'Yudah Tribe should be made formal members of the Choctaw Nation, such decisions are within the "complete authority" of the Choctaw Nation.  *Montana v. United States*, 450 U.S. 544, 564 (1981).  "Federal Courts lack authority to compel a tribe to enroll applicants for tribal membership."  *Greene v. Skibine*, 2009 WL 2208129, at *4 (E.D. Ca. July 23, 2009) (citing *Ordinance 59 Ass'n v. United States Dept. of Interior Secretary*, 163 F.3d 1150, 1159-1160 (10th Cir. 1998) ("A federal court order compelling [the Interior Secretary to act] would not have the effect of enrolling [individuals] in the tribe because tribes, not the federal government, retain authority to determine tribal membership.").[3]  Similarly, Plaintiff cannot rely on the provisions of 28 U.S.C. § 1353[4] to establish jurisdiction here because the provision does not apply to lands held by the Five Civilized Tribes.  28 U.S.C. § 1353; *Coleman v. United States Bureau of Indian Affairs*, 715 F.2d 1156, 1163-64 (7th Cir. 1983).

---

[3] Some circuit courts have reasoned that separate from a tribe's complete authority to determine tribal membership, the federal government may have independent authority to determine whether an individual is an Indian for the limited purposes of participating in government assistance programs or resolving questions related to distributions of federal trust assets.  *See Greene v. Impson*, 530 F. App'x 777, 780 (10th Cir. 2013); *Ordinance 59 Ass'n*, 163 F.3d at 1159-1160; *Baciarelli v. Morton*, 481 F.2d 610, 612 (9th Cir. 1973).  However, Plaintiff's Complaint clearly seeks to compel formal enrollment into the Choctaw Nation, and cannot reasonably be interrupted to invoke these limited exceptions.

[4] The entirety of 28 U.S.C. § 1353 provides: "The district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty. The judgment in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, **_but this provision shall not apply to any lands held on or before December 21, 1911, by either of the Five Civilized Tribes_**, the Osage Nation of Indians, nor to any of the lands within the Quapaw Indian Agency." (emphasis added)

Finally, even if Plaintiff could establish a justiciable claim here, it is not clear that he could pursue these claims on behalf of all members of the Nu'Yudah Tribe. Questions of whether each member of the Nu'Yudah Tribe complied with the specific treaty and membership requirements for enrollment into the Choctaw Nation likely require individualized proof as to each member. *See, e.g.*, *Cherokee Freedman v. United States*, 161 Ct. Cl. 787, 789-90 (1963).

### Disposition

In sum, even construing the factual allegations in Plaintiff's Amended Complaint broadly, the Court cannot readily identify a claim with federal jurisdiction so to satisfy the pleading requirements of Federal Rule of Civil Procedure 8. As Plaintiff's Amended Complaint does not state a claim upon which relief may be granted, Plaintiff's Motion for Leave to Proceed IFP (Doc. 11) is **DENIED**. Plaintiff's Amended Complaint (Doc. 9) is **DISMISSED, without prejudice**. The Clerk of Court is directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated: January 14, 2022

                                            DAVID W. DUGAN
                                            United States District Judge